# UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: | ) |
| | ) |
| Jean Marie Scott, | ) Case No. 16-41545-can7 |
|     Debtor. | ) |
| | ) |
| | ) |
| United States Trustee, | ) |
|       Plaintiff, | ) |
| | ) Adv. No. 17-04048-can |
| v. | ) |
| | ) |
| Law Solutions Chicago, LLC, | ) |
| | ) |
|     and | ) |
| | ) |
| David L. Cooper, | ) |
|     Defendants. | ) |

## REPORT AND RECOMMENDATION TO THE DISTRICT COURT ON DEFENDANTS' MOTION TO WITHDRAW THE REFERENCE

At the heart of this matter is which court – bankruptcy or district – should decide whether the debtor's bankruptcy attorneys violated the bankruptcy code and applicable rules and should be sanctioned.  The defendant attorneys argue that the bankruptcy court lacks jurisdiction to determine whether they violated certain ethical rules, and they seek to withdraw the reference of the plaintiff United States Trustee's complaint against them. This court reports and recommends that the district court deny the defendant attorneys' motion.[1]

---

[1] Fed. R. Bankr. P. 5011(a). All subsequent references shall be to the federal rules of bankruptcy procedure, unless otherwise noted.

1

### *Procedural Background*

The debtor Jean Scott filed a voluntary petition for chapter 7 relief in June 2016. She has received her discharge and has since moved out of state. She is not a party to this adversary proceeding.

Local Missouri attorney, defendant David Cooper, filed Ms. Scott's bankruptcy petition. The filing was "skeletal," in that it did not include all schedules, statements, and related documents. DK 1.[2] Mr. Cooper's Rule 2016(b)[3] disclosure of compensation filed with the petition [DK 6] certified that Ms. Scott had paid him $1,350 for his legal fees and that he had not shared his compensation with any other firm.[4] Mr. Cooper signed the disclosure as a member of the defendant law firm UpRight Law, LLC, of Kansas City, Missouri. He also certified that the Rights & Responsibilities Agreement ("RRA") required by local rule had been executed. DK 2.[5] Among other requirements, the RRA requires that a bankruptcy lawyer meet "personally"[6] with a debtor to prepare bankruptcy documents, counsel the debtor about the various bankruptcy filing options (chapters 7 and 13), and explain how the attorneys' fees are being determined, charged, and paid.[7]

The court entered an order to show cause why the relief should not be set aside for the failure to file all the required schedules, statements, and related documents with the petition. DK 8. Mr. Cooper in turn filed a motion to extend time to file the missing documents, alleging that he

---

[2] *See* Local Rules of Procedure for the United States Bankruptcy Court, W.D. Mo. 1009-1.  Note that references to the docket in the main bankruptcy case will be referred to as "DK"; references to the docket in the adversary proceeding will be to "ADV DK."

[3] Fed. R. Bankr. P.  2016(b).

[4] *See* 11 U.S.C. § 504 (prohibiting fee sharing except with respect to members or partners in a firm).

[5] *See* L.R. 2016-1. A copy of the Western District of Missouri's chapter 7 RRA (Form MOW 2016-1.3) is attached and made a part of this report.

[6] The RRA states that: "The term "personally" means that the described service will be performed only by an attorney who is a member in good standing of the Bar and admitted to practice before the bankruptcy court. The service shall not be performed by a non-attorney even if that individual is employed by the attorney and is under the direct supervision and control of that attorney."

[7] There is no dispute that Mr. Cooper did at some point personally meet with Ms. Scott.

2

filed the case on an emergency basis to stop a bank account garnishment, and that he had not had time to finalize the documents. DK 10. He signed the motion as a shareholder of Ford & Cooper, P.C., at the same Kansas City, Missouri address as he listed for his filing as a member of UpRight Law.[8] The court granted the extension motion. When Mr. Cooper ultimately filed the rest of the documents, Ms. Scott certified under penalty of perjury in the statement of financial affairs that she had paid UpRight Law of Chicago, Illinois $1,350 for attorney fees in 2015. DK 12, p. 35.[9]

Several months later, the plaintiff United States Trustee ("UST") filed a motion for sanctions against UpRight Law and Mr. Cooper (collectively, "Defendants"). DK 20. The motion was a broad-based attack on UpRight's nontraditional, multi-state business model of preparing bankruptcy cases in Chicago and then assigning the case for filing to a local attorney who agreed to be some kind of "partner" in UpRight to avoid concerns of inappropriate fee-sharing.

The UST alleged that Ms. Scott had first consulted by phone with UpRight's nonattorney staff members in Chicago in December 2014 and that mostly nonattorneys had prepared the bankruptcy papers for her filing in Missouri. The UST alleged that after Ms. Scott agreed to retain UpRight, UpRight failed to timely provide her with an executed copy of the fee agreement with a clear and conspicuous disclosure of the amount of the fees charged as required by § 528(a)(1), one of the so-called "debt relief agency" ("DRA") provisions of the bankruptcy code.[10] The UST alleged that UpRight had unnecessarily delayed some 19 months in referring Ms. Scott's case to the Missouri-licensed lawyer, Mr. Cooper. The UST also alleged that UpRight had violated the RRA and the Missouri rules of professional conduct ("MRPC") by treating the fees Ms. Scott paid

---

[8] According to a partnership agreement in the record, Mr. Cooper is a "partner" of UpRight Law in addition to being a partner in his own local law firm. *See* DK 20-1.

[9] It is not clear and has never been clear how much if any of this amount UpRight paid to Mr. Cooper or whether he had a separate fee agreement with Ms. Scott. It is also not clear whether the sum of $1,350 is correct. *Order Denying Defendants' Motion for Reconsideration of the Court's Order Denying Summary Judgment On All Claims.* ADV DK 63, at 11.

[10] 11 U.S.C. §§ 526 – 528. All future statutory references shall be to title 11, unless otherwise noted.

in increments over those 19 months as earned upon receipt and by not meeting with her personally, and that Mr. Cooper's basis for seeking an extension to file missing documents was a misrepresentation[11] to the court given Upright's 19-month delay. Under these circumstances, the UST argued, the attorney fee was unreasonable and excessive under § 329(b).[12] The UST requested that the court void the fee agreement, order disgorgement, and impose additional sanctions under the bankruptcy code and bankruptcy national and local rules, and under its inherent authority for these violations and violations of the MRPC.

The Defendants' response expressly admitted that UpRight had violated the MRPC and the RRA when it failed to deposit Ms. Scott's attorney fees in UpRight's trust account and instead treated the fees as earned on receipt. DK 32. UpRight likewise admitted its failure to comply with § 528(a) because it could not show it had timely sent Ms. Scott a fee agreement. UpRight did not deny the court's inherent authority to sanction attorneys but argued that since it was willing to disgorge its attorney's fees, any other requests for sanctions or discipline were in essence moot. The court disagreed,[13] directed the parties to submit a scheduling order, and set the matter for final pretrial and trial. DK 37.

Shortly before the trial setting, the UST withdrew its sanctions motion and filed this adversary complaint. ADV DK 1. UpRight did not object to the dismissal[14] of the sanctions motion. The complaint echoes many of the allegations in the motion, but as later amended

---

[11] Section 707(b)(4) requires attorneys who file chapter 7 bankruptcy cases for individual debtors to comply with Rule 11-like requirements to conduct reasonable factual and legal investigation before filing the case.

[12] *See generally Schroeder v. Rouse (In re Redding)*, 247 B.R. 474, 478 (8th Cir. B.A.P. 2000).

[13] *See, e.g., In re Steward*, 828 F.3d 672, 686 (8th Cir. 2016) (offer to disgorge did not moot request for sanctions).

[14] *See* Rule 7041 as incorporated by Fed. R. Civ. P. 41 (governing dismissal).

4

[ADV. DK 19] sets forth six separate counts:

- Count I: violation of § 526(a)(3) (multiple misrepresentations to Ms. Scott, including, *inter alia,* how quickly her case would be filed);

- Count II: violation of § 528(a)(1) and (a)(2)) (failure to disclose the amount of fee in the fee agreement clearly and conspicuously and failure to timely provide Ms. Scott a copy);

- Count III: violation of § 329(b) (disgorgement for excessive fees and request for examination of the fees under Rule 2017);

- Count IV: violation of § 707(b)(4)(C) (misrepresentation of the need for an extension of time to file the missing bankruptcy documents);

- Count V: violation of MRPC 4-1.15 and 1.5 (by treating the fees as earned on receipt and charging an unreasonable fee); and

- Count VI: violation of MRPC 4-5.5(c)(1) (unauthorized practice of law by a nonattorney staff member providing legal advice to Ms. Scott).

The UST seeks varying forms of relief in addition to other general equitable relief with respect to each specific count. In Count I, the UST requests injunctive relief barring UpRight from future violations of the DRA provisions in addition a civil penalty under § 526(c)(5)(A). Count II requests avoidance of the fee agreement and disgorgement against UpRight, again pursuant to the DRA provisions. Count III seeks a determination that the fees are unreasonable and requests disgorgement again against both Defendants pursuant to § 329(b). In addition to requesting attorney's fees, Count IV seeks to bar UpRight from filing bankruptcy cases in this district for one year and seeks a public censure of Mr. Cooper pursuant to § 707(b)(4). Counts V and VI, alleging

violations of the MRPC, likewise request the court to impose the one-year bar against UpRight plus payment of attorney's fees.[15]

The UST alleged all counts were "core" proceedings and in any event consented to the bankruptcy court's authority to hear and determine the complaint.[16] UpRight admitted that Counts I through IV were core, but denied that Counts V and VI were, and likewise refused to consent to the bankruptcy court's authority to hear and determine those counts. ADV DK 48. Due to numerous discovery and other disputes between the parties, the matter has only now been set for a three-day trial in late January 2019. ADV DK 156. In the process of readying the matter for a final evidentiary hearing, however, the court directed the parties to bring the issue of the court's authority to hear and determine Counts V and VI before it and set deadlines for the parties to do so. ADV DK 132. UpRight then filed its motion to withdraw the reference, not just with respect to Counts V and VI, but as to all counts; the UST opposes the motion. At a status hearing held on September 25, 2018, the parties waived oral argument on the motion so the matter is now fully briefed and ready for determination.

*Discussion*

UpRight argues not only that it does not consent to the bankruptcy court's authority to hear and determine Counts V and VI, but that the bankruptcy court *lacks jurisdiction* over those counts. It argues that only the district court has the jurisdiction to conduct a disciplinary investigation under Rule 83.6 of the Local Rules for the Western District of Missouri, and that because of the bankruptcy court's lack of jurisdiction over part of the complaint, judicial efficiency mandates that the reference of all counts should be withdrawn. The court disagrees.

---

[15] It is unclear what basis the UST relies on to seek attorney's fees as "damages" under Counts V and VI.
[16] 28 U.S.C. § 157(c)(1); Rule 7008.

6

*Timeliness of the Motion to Withdraw Reference*

At the threshold, the UST argues that the Defendants waived the right to request withdrawal of reference by failing to timely file their withdrawal motion.[17] The court does not agree.

28 U.S.C. § 157(b)(3) requires that motions to withdraw reference be "timely" filed. Nothing in the code or rules specifies what "timely" means. From the inception of this matter, however – when the UST first filed its motion for sanctions – the Defendants denied the bankruptcy court's authority to adjudicate their liability for MRPC violations. They did so in their response to the sanctions motion before that motion was withdrawn and did so in their answer to the UST's first amended complaint. As will be discussed below, even before filing an answer the Defendants filed a motion for summary judgment on Counts V and VI, arguing that those counts did not give rise to a basis for civil liability. The court set a deadline for the filing of a motion to withdraw reference which the Defendants timely complied with.

This court recommends that the district court conclude that the Defendants did not waive their right to file a motion to withdraw reference and that the motion to withdraw reference was timely filed under the circumstances of this case.

*Withdrawal of Reference Generally*

Federal district courts have original jurisdiction over bankruptcy cases.[18] 28 U.S.C. § 157(a) provides that a district court may refer "all cases under title 11 and any or all proceedings

---

[17] 28 U.S.C. § 157(b)(3): "The bankruptcy judge shall determine, on the judge's own motion or on the timely motion of a party, whether a proceeding is a core proceeding . . . ."

[18] 28 U.S.C. § 1334.

arising under[19] title 11 or arising in[20] or related to[21] a case under title 11" to the bankruptcy judges

for that district.  The district court for the Western District of Missouri did so by order dated August

15, 1984.[22]  Ms. Scott's chapter 7 "bankruptcy case" and this adversary complaint filed in her

bankruptcy case have therefore been automatically referred to this court.[23]

     The district court's automatic reference of bankruptcy matters may be withdrawn, under

either discretionary or mandatory grounds.[24]  A district court has discretion to withdraw reference

for "cause shown."[25]  UpRight does not seek discretionary withdrawal of reference for cause,

however.  Rather, UpRight argues that 28 U.S.C. § 157(d) mandates withdrawal of reference

because resolution of this matter, within the words of § 157(d), requires "consideration of both

title 11 and other laws of the United States regulating organizations or activities affecting interstate

commerce.[26]  This court disagrees.

### Mandatory Withdrawal of Reference

     The Defendants argue that withdrawal of the reference as to Counts V and VI is mandatory

because those counts "can only be determined by reference to law wholly outside the Bankruptcy

Code,"[27] namely, the MRPC.

---

[19] "Arising under" means a claim that "is created by or based on a provision of the bankruptcy code."  *Frelin v. Oakwood Homes Corp*., 292 B.R. 369, 376-77 (Bankr. E.D. Ark. 2003) (citing *National City Bank v. Coopers & Lybrand*, 802 F.2d 990, 994 (8th Cir. 1986)).

[20] "Arising in" means matters that "can only be brought in a bankruptcy case" because the claim "has no existence outside of bankruptcy."  *In re Ames Dept. Stores, Inc.*, 542 B.R. 121, 135 (Bankr. S.D. N.Y. 2015); *see also Frelin v. Oakwood Homes*, 292 B.R.at 377 ("A case 'arises in' a case under title 11 if it is not based on any right expressly created by the bankruptcy code but has no existence outside the bankruptcy case.").

[21] A matter is considered "related to" a bankruptcy case if could "conceivably have an effect on the estate being administered in bankruptcy."  *Specialty Mills v. Citizens State Bank*, 51 F.3d 770, 773-74 (8th Cir. 1995) (adopting the so-called *Pacor* test derived from *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984)).

[22] *Order Regarding Reference of Bankruptcy Matters to United States Bankruptcy Judges*, available on the court's website at http://www.mow.uscourts.gov/bankruptcy/rules.

[23] For a further discussion of the differences between matters "arising in," "arising under," and "related to," see *In re Sinn*, Adv. No. 14-4051, 2014 WL 7689811 (Bankr. W.D. Mo. Oct. 7, 2014).

[24] *Eide v. Haas* (*In re H & W Motor Express Co.*), 343 B.R. 208, 212 (N.D. Iowa 2006).

[25] *Id.* at 213.

[26] 28 U.S.C. § 157(d).

[27] *Defendants' Reply Suggestions in Support of Their Motion to Withdraw the Reference to the Bankruptcy Court*. ADV DK 154, at 1.

8

But that is not what § 157(d)'s mandatory withdrawal provision says. The plain language of § 157(d) mandates withdrawal only when the bankruptcy court considers "*other laws of the United States regulating organizations or activities affecting interstate commerce.*" Local rules of practice and state rules of professional conduct are not laws of the United States regulating organizations or activities affecting interstate commerce.[28] Defendants cite no persuasive authority holding to the contrary.

Judges in the Western District of Missouri have narrowly construed the mandatory withdrawal provision.[29] The Defendants' expansive interpretation is not supported by the plain text or any case authority. This court therefore recommends that the request for mandatory withdrawal under § 157(d) be denied.

### *Discretionary Withdrawal of Reference*

UpRight has also argued that although the bankruptcy court has jurisdiction and authority to hear and determine Counts I through IV, the bankruptcy court's lack of jurisdiction over Counts V and VI means that reference of all counts should be withdrawn, calling partial withdrawal "untenable and inefficient."[30] To the extent this argument constitutes a motion to withdraw reference based on discretion, the court likewise recommends denial of the motion.

---

[28] *See In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 995 (2d Cir. 1990) (mandatory withdrawal "has been construed narrowly" and is "reserved for cases where substantial and material consideration of non-Bankruptcy federal statutes is necessary for the resolution of the proceeding."); *Vreugdenhil v. Hoekstra*, 773 F.2d 213, 215 (8th Cir. 1985) ("Where, as here, the only federal law at issue is the Bankruptcy Code itself, withdrawal [of the reference] is generally discretionary.").

[29] In fact, both Judge Smith and Judge Ketchmark of this district have followed the Seventh Circuit's approach to mandatory withdrawal which holds that "mandatory withdrawal is required only when those issues require the interpretation, as opposed to mere application, of the [federal] non-title 11 statute, or when the court must undertake analysis of significant open and unresolved issues regarding the non-title 11 law." *Fayne v. Innovations 365, LLC*, 2018 WL 3614983 at *2 (W.D. Mo. July 27, 2018) (following Judge Smith's decision in *In re Miller Auto. Grp.*, 2013 WL 936616 (W.D. Mo. March 11, 2013)).

[30] *Suggestions in Support of Defendants' Motion for Withdrawal of the Reference*. ADV DK 138, at 3.

9

Section 157(d) does not define "cause" for withdrawal of the reference. In considering the meaning of "cause," however, courts consider several factors:

(1) whether the claims are core or non-core;

(2) delay and costs to the parties;

(3) the efficient use of judicial resources;

(4) the uniformity of bankruptcy administration;

(5) the prevention of forum shopping; and

(6) the presence of a jury demand.[31]

Whether the district court should withdraw the reference to the bankruptcy court is committed to the district court's sound discretion.[32] The moving party bears the burden of proof on "cause."[33]

The crux of the Defendants' argument is that, because the district court admits attorneys to practice and investigates and determines whether attorneys should be disciplined under Local Rule 83.6(d), only the district court has both authority and jurisdiction to investigate and determine whether they should be disciplined for their alleged MRPC violations. This argument is disingenuous, for several reasons.

First, the United States Supreme Court has affirmed that courts have inherent authority to sanction. In *Chambers v. NASCO, Inc.*,[34] the Supreme Court stated unequivocally: "Federal courts have the inherent power to manage their own proceedings and to control the conduct of those who appear before them." *Chambers* also makes clear that federal courts have discretion to fashion an appropriate remedy when employing their inherent power to punish conduct which abuses the

---

[31] *In re H & W Motor Express Co*, 343 B.R. at 214.  *See also Strauss v. Cole*, 2017 WL 6643995 at *5-6 (W.D. Mo. Dec. 29, 2017) (Judge Nanette K. Laughrey of this district discussing discretionary withdrawal of the reference).
[32] *Id.*
[33] *Id.*
[34] 111 S.Ct. 2123, 2126, 501 U.S. 32, 33 (1991).

judicial process.[35] The Eighth Circuit has expressly held that bankruptcy courts as federal courts

also have such inherent power, and that the power to sanction includes the power to discipline.[36]

The Eighth Circuit unfortunately has had more than a few appeals deriving from bankruptcy court

sanctions orders,  and in not one has the Eighth Circuit ever held that bankruptcy courts lack

jurisdiction to sanction bankruptcy attorneys, including sanctions that involve discipline.[37] It goes

without saying that if the bankruptcy court has the power to sanction then it must perforce have

jurisdiction to do so.[38]

Second, the Defendants ignore the bankruptcy court's Local Rule 2090-1, governing

admission to practice before the bankruptcy court, which adopts the standards and requirements of

the district court's local rules, which in turn adopt the MRPC. The bankruptcy court's L.R. 2016-

1 likewise governs how bankruptcy attorneys are compensated.[39] These rules have been duly

enacted and are authorized under Rule 9029, and Defendants have not argued otherwise. These

---

[35] *Id.*

[36] *In re Steward*, 828 F.3d 672, 686–87 (8th Cir. 2016) ("Bankruptcy courts have the authority to sanction persons appearing before them, and this authority includes the right to 'control admission to [their] bar.'") (citing *In re Burnett*, 450 B.R. 116, 132 (Bankr. E.D. Ark. 2011) (quoting *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)); *Law v. Siegel*, 571 U.S. 415, 134 S.Ct. 1188, 1194, 188 L.Ed.2d 146 (2014); *In re Clark,* 223 F.3d 859, 864 (8th Cir. 2000)).

[37]  *See In re Ragar*, 3 F.3d 1174, 1178-79 (8th Cir. 1993) (holding that the bankruptcy court's criminal contempt order was within § 105(a)'s clear delegation of authority and that the use of a criminal or civil contempt power may be necessary or appropriate to enforce a violated order); *In re Mahendra*, 131 F.3d 750 (8th Cir. 1997) (affirming imposition of sanctions under Rule 9011 based on a conflict of interest); *In re Clark*, 223 F.3d 859, 864 (8th Cir. 2000) (holding that § 105 gives bankruptcy courts broad power to implement provisions of the bankruptcy code and to prevent abuse of the bankruptcy process, which includes the power to sanction for abuses of process); *In re Kujawa*, 270 F.3d 578 (8th Cir. 2001) (affirming award of sanctions under Rule 9011 and inherent authority); *In re Smith*, 212 Fed.Appx. 577, 578 (8th Cir. 2006) (holding that the bankruptcy court had the authority under § 105 to sanction an attorney, regardless of whether the order was characterized as a sanctions order or a contempt order); *Isaacson v. Manty*, 721 F.3d 533 (8th Cir. 2013) (affirming bankruptcy court's punitive sanctions for criminal contempt); *In re Young*, 789 F.3d 872 (8th Cir. 2015) (affirming sanctions under Rule 9011); *In re Reed*, 888 F.3d 930 (8th Cir. 2018) (holding that bankruptcy courts have constitutional authority to impose contempt sanctions on an attorney).

[38] *See also In re Tabor*, 583 B.R. 155, 175 (Bankr. N.D. Ill. 2018) (holding that bankruptcy courts have authority to oversee and correct for attorney conduct under *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991); bankruptcy courts have, essentially, four types of authority that might be invoked:  "(1) the power to regulate behavior before it inherent in all courts; (2) the direct, specific authority of a statute or rule; (3) the ability to regulate the practice of the federal bar, as delegated to the court by the United States District Court for this District; and (4) the authority afforded specifically to the bankruptcy courts under section 105 of the Bankruptcy Code.").

[39] L.R. 2016-1 implements Rule 2016, which in turn implements § 329, governing the reasonableness of debtor's attorney's fees.

11

rules likewise provide both a basis for bankruptcy court jurisdiction and authority to hear and determine the UST's complaint, including the power to impose discipline.

Third, the Defendants' reading of the UST's complaint as a request that this court "conduct a disciplinary hearing" in contravention of the district court's L.R. 83.6 elevates form over substance. The Defendants first asserted a variation of this argument in their motion for summary judgment, when they argued that the UST was in effect seeking improperly to prosecute violations of the MRPC. *See* ADV DK 11. They renewed this argument in their motion to reconsider this court's oral ruling denying summary judgment. ADV DK 43. Specifically, they pointed to numerous cases all holding that violations of the MRPC do not give rise to independent causes of action. But as this court explained in its order denying summary judgment, the Defendants initially admitted they violated the court's local rules and the MRPC and agreed to the bankruptcy court's jurisdiction and authority to sanction them. *See* ADV DK 63 at 7. This court as well as the UST thus had a duty to investigate the alleged violations.[40]

The court further explained that although it is admittedly unorthodox to structure a complaint to include the request for discipline for MRPC violations as separate counts – instead of as prayers or requests for discipline as a form of additional relief – the UST's approach was not without precedent.[41]  ADV DK 63 at 18.[42] And, since the complaint fairly alleged ethical and legal

---

[40] To the extent UpRight's argument is really one of the UST's standing to file this complaint, the court rejects that argument outright. The UST has standing to file motions and complaints against bankruptcy attorneys. *See* 28 U.S.C. § 586 (governing United States trustee's duties).

[41] If there is confusion about what relief the UST is requesting in Counts V and VI, part of that can be lain at the feet of the Defendants. The Defendants elected to file a motion for summary judgment, in lieu of an answer, a Rule 12(b)(6) motion, or a Rule 12(e) motion for more definitive statement. In any event, the court notes that UpRight has not alleged prejudice from the UST's structuring of its complaint; it has fully answered and discovery has been completed.

[42] In addition to the cases cited in the court's order, *see State ex rel. Wallace v. Munta*, 989 S.W.2d 641 (Mo. Ct. App. 1999) (Missouri courts have reviewed the authority of trial courts in deciding issues based on the Rules of Professional Conduct; hold that a judge has the power to enforce). *See also In re Mullen*, 2007 WL 2712957 (Bankr. D. N.H. Sept. 14, 2007) (holding that rules of professional conduct "provide an instructive backdrop" to a substantive request for relief).

12

violations and sought appropriate relief in the form of sanctions and other equitable relief, it was proper for the court to deny the Defendants' request for judgment as a matter of law on those counts. This court made clear that in the event the evidence at trial showed that the Defendant violated the court's local rules and the MRPC, no "money judgment" would be imposed in favor of the UST.

The spin on this argument now – that the bankruptcy court lacks jurisdiction to consider violations of the MRPC because only the district court may do so under L.R. 83.6 – again ignores a plain reading of the UST's complaint, a plain reading of the district court's L.R. 83.6 and the bankruptcy court's L.R. 2090-1, and the bankruptcy court's recognized power to sanction attorneys who appear before it.[43]

Finally, none of the applicable factors considered in determining "cause" to withdraw the reference favors the Defendants.

With respect to the first factor regarding the core or non-core nature of the proceeding, whether the Defendants violated §§ 329, 526–529, or 707(b)(4) of the bankruptcy code as set forth in Courts I through IV are matters "arising under" title 11 and are thus core proceedings. 28 U.S.C. § 157(b)(2)(A). Defendants have already so conceded. Counts V and VI – which this court construes as alternate requests for relief from the allegedly improper conduct violating §§ 329, 526–529, and § 707(b)(4) – likewise "arise under" title 11 and are also core.[44] Nothing could be so "core" to a bankruptcy case as a proceeding to determine whether the bankruptcy attorneys who filed that bankruptcy case did so legally and ethically.

---

[43] The court would note that if the complaint is construed as requesting the bankruptcy court to conduct a disciplinary hearing as opposed to requesting relief in the form of sanctions (including discipline), then neither the bankruptcy court nor the district court has jurisdiction, since 28 U.S.C. §1334 conferring bankruptcy jurisdiction would not apply, and there is otherwise no basis for federal court jurisdiction. That result would be absurd.

[44] The court also construes Counts V and VI to "arise under" the code pursuant to § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title").  If not "arising under," they are certainly "arising in."

13

The second factor regarding delay and cost likewise does not support the Defendants' arguments. This matter has been pending for more than two years. This court has set a trial for January 2019. To start over now before another court would only further delay resolution of this already delayed matter and could only further add to the costs.[45] For the same reasons, the third factor of efficient use of judicial resources certainly cuts against having another court determine all or part of the case, since the counts and various forms of relief all arise from the same bankruptcy representation. Likewise, this court is intimately familiar with both the procedural history and the alleged facts of this case, in addition to being deemed an expert in substantive bankruptcy law and procedure.

The remaining factors – uniformity of bankruptcy administration, the prevention of forum shopping, and the presence of a jury demand – all support denial of the withdrawal motion. Defendants have not demanded a jury trial. Bankruptcy courts certainly have an *interest* in ensuring that the bankruptcy code and rules are uniformly applied to bankruptcy attorneys, and that sanctions including discipline be imposed where appropriate. This bankruptcy judge also has *experience* in doing so.[46] And given that experience, a reasonable judge could conclude that the Defendants' motivation here is to avoid having a bankruptcy judge decide whether they violated bankruptcy law and rules and in so doing, committed professional misconduct.

The Defendants raise numerous other arguments: that they charged a reasonable fee for Ms. Scott's bankruptcy representation; that they did a good job in that representation; that in doing so they earned their fee; that any violations of the bankruptcy law or rules did not harm Ms. Scott;

---

[45] In the court's order denying the Defendants' motion to reconsider, the court observed: this proceeding has not been a model of the "just, speedy, and inexpensive determination" that the Federal Rules contemplate. ADV DK 63, at 5 (citing Fed. R. Bankr. P. 1001, which states that "[t]hese rules shall be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every case and proceeding.").
[46] *See In re Small*, Case No. 18-40362, 2018 WL 2938517 (Bankr. W.D. Mo. June 7, 2018) (ordering disgorgement of bankruptcy attorney fees); *In re Pigg*, Case No. 14-50266, 2015 WL 7424886 (Bankr. W.D. Mo. Nov. 20, 2015) (same; referral for discipline).

14

and that any disgorgement or other sanctions will not redound to the benefit of the bankruptcy estate so should not be imposed, among other arguments. They complain that the UST has used scorched-earth litigation tactics in this case (and around the country) in attacking their nontraditional bankruptcy law practice, among other complaints about the UST.[47]

Yet these arguments and complaints all go to the merits of the UST's complaint, not to the merits of the Defendants' motion to withdraw reference. The bankruptcy court not only has jurisdiction and authority to hear those arguments and complaints at trial but is frankly well equipped – based on the bankruptcy court's bankruptcy experience and specialized bankruptcy expertise – to decide whether those arguments have merit in the context of this case.

For these reasons, the court likewise recommends that to the extent the Defendants' motion is construed as a request for discretionary withdrawal of reference that it also be denied. The court recommends that Defendants' alternative request – that reference to Counts V and VI only be withdrawn – be denied, since the court agrees with Defendants that it would be "untenable and inefficient" to have two different courts decide parts of a case relating to the same set of facts.

### *Conclusion*

The bankruptcy court respectfully recommends: (1) that the district court determine that the bankruptcy court has jurisdiction over Counts V and VI of the UST's complaint; (2) that the district court determine that all counts of the complaint are core and that therefore the bankruptcy court has both statutory and constitutional authority to hear and determine the UST's complaint and to enter a final judgment on all counts; and (3) that the district court deny the Defendants' motion to withdraw reference. In the alternative, if the district court determines that Counts V and

---

[47] *See, e.g., In re Foster*, 586 B.R. 62 (Bankr. W.D. Wash. 2018); *In re Williams*, 2018 WL 832894 (Bankr. W.D. Va. Feb. 12, 2018); *In re Banks*, 2018 WL 735351 (Bankr. W.D. La. Feb. 2, 2018); *In re Bishop*, 578 B.R. 158 (Bankr. W.D. N.Y. 2018); *In re White*, 2018 WL 1902491 (N.D. Ala. April 18, 2018); *In re Cain*, 2018 WL 3954185 (Bankr. M.D. Ala. Aug. 14, 2018).

15

VI are non-core, related-to matters, the bankruptcy court recommends that the district court nonetheless deny the motion and authorize the bankruptcy court to hear all counts, to make a final determination as to Counts I through IV, and to make a report and recommendation to the district court as to Counts V and VI only.

Dated: <u>October 24, 2018</u>

<u>/s/ Cynthia A. Norton</u>
Chief Judge Cynthia A. Norton
